562 F.2d 607
 96 L.R.R.M. (BNA) 2988, 82 Lab.Cas. P 10,179,
1977-2 Trade Cases 61,680
 CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION, INC.; Associated
Independent Owner Operators, Inc.; Charles F.
Baird and Robert W. Raquet, Plaintiffs-Appellants,
v.
ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SAN DIEGO
CHAPTER, INC.; San Diego Building Contractors Association;
Engineering and Grading Contractors Association, Inc., San
Diego Chapter; and the International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
Local Union # 36, Defendants-Appellees.
 No. 76-1432.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 5, 1977.
Rehearing and Rehearing En Banc Denied Dec. 30, 1977.
 
 John A. Mitchell, Mitchell, Schmidt, D'Amico, McCabe & Stutz, San Diego, Cal., argued for plaintiffs-appellants.
 Jerry J. Williams, Brundage, Williams & Zellman, San Diego, Cal., argued for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before BARNES and SNEED, Circuit Judges, and WONG,* District Judge.
 WONG, District Judge:
 This class action charges the defendant labor union and defendants trade associations with violations of the federal antitrust laws. The district court granted the union's motion to dismiss the amended complaint. We reverse and remand to the district court to afford the appellants an opportunity to further amend their complaint to state a cause of action based upon a conspiracy or contract other than a valid collective bargaining agreement.
 I. FACTS
 The Associated General Contractors of America, San Diego Chapter, Inc. (AGC), the Engineering and Grading Contractors, Inc., San Diego Chapter (EGC), and the San Diego Building Contractors Association (BCA) are trade associations which negotiate multi-employer collective bargaining agreements. Contractors and subcontractors (employers) comprise the membership of these associations.
 The California Dump Truck Owners Association, Inc. (CDTOA) is a non-profit corporation of 800 for-hire dump-truck carriers. Appellant Baird is the chairman of the San Diego chapter of the CDTOA. The Associated Independent Owner Operators, Inc. (AIOO) is a non-profit corporation which has for-hire dump-truck owners as part of its membership. Appellant Raquet is the San Diego County chairman for the AIOO. Both Baird and Raquet own and operate trucks and equipment in their own names and have hauled material to and from construction sites in the Southern District of California. The appellants and their members are not represented by the AGC, the EGC, or the BCA.
 Appellee International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union # 36 (Local 36) is the exclusive bargaining representative for many persons employed by the employers. Local 36 negotiated a collective bargaining agreement, entitled the Master Labor Agreement (MLA), with the AGC, the EGC, and the BCA. The MLA went into effect on June 16, 1974.
 The appellants initiated this class action lawsuit on July 26, 1974. They amended their complaint on November 5, 1974. The amended complaint asserts jurisdiction under 28 U.S.C. §§ 2201-02, the Sherman Act, and the Clayton Act. The appellants allege that beginning on or about June 14, 1974, the defendants and unnamed co-conspirators have illegally combined and conspired in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and section 4 of the Clayton Act, 15 U.S.C. § 15.
 The amended complaint alleges that the defendants conspired to (1) fix prices, (2) eliminate the appellants as competitors, (3) restrain trade, and (4) boycott the appellants. As a result, the amended complaint contends (1) prices have been fixed, (2) the public has been deprived of the benefit of free and open competition, (3) competition in the relevant market has been restrained, and (4) the plaintiffs will cease to exist as competitive entities.
 Local 36 filed a motion to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. The motion was granted. The plaintiffs have appealed.
 II. JURISDICTION
 There is federal jurisdiction pursuant to the Sherman Act,15 U.S.C. § 4, and the Clayton Act, 15 U.S.C. § 15.[1] The National Labor Relations Board does not have exclusive jurisdiction of this case since the federal courts can decide "labor law questions that emerge as collateral issues in suits brought under independent federal remedies, including the antitrust laws." Connell Construction Co., Inc. v. Plumbers and Steamfitters Local Union No. 100, 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975) (footnote omitted).
 III. FEDERAL ANTITRUST LAWS
 The appellants contend that the appellees have illegally conspired and combined in violation of the Sherman and Clayton Acts. Local 36 believes that it is protected by the labor exemption to the federal antitrust laws. There are two recognized labor exemptions; one statutory, one non-statutory.
 A. Statutory immunity
 The basic source of Local 36's statutory exemption from the federal antitrust laws is the Clayton Act, 15 U.S.C. § 17, and 29 U.S.C. § 52, and the Norris-LaGuardia Act, 29 U.S.C. §§ 101, 104, 105, 113. Connell, 421 U.S. at 621-22, 95 S.Ct. 1830; United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941). Section 6 of the Clayton Act, 15 U.S.C. § 17, says:
 The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor . . . organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws.
 In the Norris-LaGuardia Act, Congress set out the public policy for the exemption. 29 U.S.C. § 102 says:
 Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purposes of collective bargaining or other mutual aid or protection . . . .
 This exemption is not absolute; it is subject to exceptions. In Allen Bradley Co. v. Local Union No. 3, IBEW, 325 U.S. 797, 809, 65 S.Ct. 1533, 1540, 89 L.Ed. 1939, reh. denied, 326 U.S. 803, 66 S.Ct. 11, 90 L.Ed. 489 (1945), the Supreme Court said:
 when (a union participates) with a combination of businessmen who had complete power to eliminate all competition from others, a situation (is) created not included within the exemptions of the Clayton and Norris-LaGuardia Acts.
 Accord, Connell, 421 U.S. at 622, 95 S.Ct. 1830; United Mine Workers of America v. Pennington, 381 U.S. 657, 662, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (wage scale).
 In Allen Bradley, the Court distinguished the aiding and abetting of businessmen in violation of the Clayton Act
 from unilateral union activity which may achieve an end identical to that which results from labor and business acting in concert. Unions that aid and abet business combinations violate antitrust laws; unions that unilaterally employ strikes, boycotts and other acts recognized by Section 20 of the Clayton Act do not, even though such acts may produce a situation indistinguishable from that which would result from an illicit combination. . . .
 . . . Union-imposed restraints which serve purposes closely related to wage, hours, and conditions of employment generally are considered free of Allen Bradley taint. On the other hand, union cooperation which enables one or more employers to obtain control of the supply and price of a certain product in a particular market, or to make possible the elimination of troublesome competition is unmistakenly tainted.
 Bodine Produce, Inc. v. United Farm Wkrs. Org. Com., 494 F.2d 541, 550-51 (9th Cir. 1974). See Allen Bradley, 325 U.S. at 809, 65 S.Ct. 1533.
 Local 36 entered into a collective bargaining agreement with the AGC, the EGC, and the BCA. That agreement concerns wages, hours, and conditions of employment. The appellants allege that the appellees have engaged in an unlawful conspiracy and combination by entering into this agreement. They are mistaken. This is the distinction the Supreme Court made in Allen Bradley. An antitrust action based upon the MLA alone does not state a claim upon which relief can be granted.
 The appellants, however, also allege that the appellees have conspired and combined with unidentified co-conspirators in ways other than through the MLA. This may state a claim.
 B. Non-statutory immunity
 In Local Union No. 189, Amal. Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965), the Supreme Court recognized a non-statutory exemption to the federal antitrust laws. Connell, 421 U.S. at 622, 95 S.Ct. 1830. In Jewel Tea, the union had negotiated a multi-employer collective bargaining agreement providing hours for the marketing of fresh meat. Under the duress of a strike vote, Jewel signed the contract. It then brought suit alleging violations of the Sherman Act. Justice White (joined by Chief Justice Warren and Justice Brennan), writing for the Court, said that the national labor policy protected the marketing-hours restriction which had been arrived at "through bona fide, arm's-length bargaining in pursuit of (the union's) policies, and not at the behest of or in combination with nonlabor groups . . . ." 381 U.S. at 689-90, 85 S.Ct. at 1602.
 Justice White felt that the marketing-hours restriction was
 well within the realm of "wages, hours, and other terms and conditions of employment" . . . . And, although the effect of competition is apparent and real, perhaps more so than in the case of the wage agreement, the concern of union members is immediate and direct. Weighing the respective interests involved, we think the national labor policy expressed in the National Labor Relations Act places beyond the reach of the Sherman Act union-employer agreements on when, as well as how long, employees must work. An agreement on these subjects between the union and the employers in a bargaining unit is not illegal under the Sherman Act nor is the union's unilateral demand for the same contract of other employers in the industry.
 Id. at 691, 85 S.Ct. at 1602 (citations omitted).
 Justice Goldberg, joined by Justices Harlan and Stewart, concurred in Jewel Tea. Id. at 697, 85 S.Ct. 1596. He opined that "the Court should hold that, in order to effectuate congressional intent, collective bargaining activity concerning mandatory subjects of bargaining under the Labor Act is not subject to the antitrust laws." Id. at 710, 85 S.Ct. at 1614 (footnote omitted). He would recognize a very broad exemption to the antitrust laws.
 In Connell, supra, the Supreme Court held that the union was not immune from the federal antitrust laws. Justice Powell, writing for the majority, said:
 
 
 1
 The nonstatutory exemption has its source in the strong labor policy favoring the association of employees to eliminate competition over wages and working conditions. Union success in organizing workers and standardizing wages ultimately will affect price competition among employers, but the goals of federal labor law never could be achieved if this effect on business competition were held a violation of the antitrust laws. The Court therefore acknowledged that labor policy requires tolerance for the lessening of business competition based on differences in wages and working conditions. Labor policy clearly does not require, however, that a union have freedom to impose direct restraints on competition among those who employ its members. Thus, while the statutory exemption allows unions to accomplish some restraints by acting unilaterally, the nonstatutory exemption offers no similar protection when a union and a nonlabor party agree to restrain competition in a business market.
 
 
 2
 421 U.S. at 622-23, 95 S.Ct. at 1835 (citations omitted).
 
 
 3
 In Connell, the union obtained non-collective bargaining agreements from general contractors which provided that "in letting subcontracts for mechanical work (the general contractors) would deal only with firms that were parties to the union's current collective-bargaining agreement." Id. at 618-19, 95 S.Ct. at 1833. This was the sole objective of the agreement. Id. A contractor sought to cancel the agreement as an illegal restraint of competition. The union claimed immunity under the non-statutory exemption.
 
 
 4
 The Supreme Court concluded that the union had used direct restraints on the business markets and, therefore, it was not immune from the antitrust laws. The Court said:
 
 
 5
 In this case (the union) used direct restraints on the business market to support its organizing campaign. The agreements with Connell and other general contractors indiscriminately excluded nonunion subcontractors from a portion of the market, even if their competitive advantages were not derived from substandard wages and working conditions but rather from more efficient operating methods. Curtailment of competition based on efficiency is neither a goal of federal labor policy nor a necessary effect of the elimination of competition among workers. Moreover, competition based on efficiency is a positive value that the antitrust laws strive to protect.
 
 
 6
 Id. at 623, 95 S.Ct. at 1835.
 
 
 7
 The multi-employer collective bargaining agreement in Connell contained a "most favored nation" clause. The clause provided that if the union granted a more favorable contract to any other employer, it would extend the same terms to all members of the trade associations which had signed the collective bargaining agreement. The Supreme Court said that the clause
 
 
 8
 promised to eliminate competition between members of the Association and any other subcontractors that (the union) might organize. By giving members of the Association a contractual right to insist on terms as favorable as those given any competitor, it guaranteed that the union would make no agreement that would give an unaffiliated contractor a competitive advantage over members of the association. Subcontractors in the Association thus stood to benefit from any extension of (the union's) organization, but the method (the union) chose also had the effect of sheltering them from outside competition in that portion of the market covered by subcontracting agreements between general contractors and (the union). In that portion of the market, the restriction on subcontracting would eliminate competition on all subjects covered by the multi-employer agreement, even on subjects unrelated to wages, hours and working conditions.
 
 
 9
 Id. at 623-24, 95 S.Ct. at 1836 (footnote omitted).
 
 
 10
 Local 36 contends that Connell is distinguishable because (1) the union there sought to directly control the market, (2) there was no collective bargaining agreement between the union and the employers in Connell, and (3) the union had no interest in representing Connell's employees. We agree.
 
 
 11
 Here, there is a collective bargaining agreement between Local 36 and the trade associations. The appellants are complaining about the effect of that collective bargaining agreement upon them. In Connell, there was a collective bargaining agreement between the union and the subcontractor, but there was also another agreement between the union and the general contractors. The plaintiff in Connell was objecting to this latter agreement.
 
 
 12
 In Connell, the Supreme Court looked at the "most favored nation" clause in that collective bargaining agreement and found that it promised to eliminate competition. Here, there is no such clause in the MLA. There is a provision that owner-operators are to receive a rate of pay not less than that specified in the MLA.[2] Although that clause might have some effect on the hiring of owner-operators not represented by Local 36, it does not preclude the hiring of independent owner-operators.
 
 
 13
 The MLA may have an effect upon the appellants, but it is an indirect effect. The MLA does not prohibit the use of owner-operators by the employers. Under the MLA, an employer may obtain trucks or equipment from any source.[3] The only requirement is that the owner-operators must be cleared before starting to work on the second day. To be cleared, the owner-operators must present themselves and proof of legal or registered ownership at Local 36's office. The owner-operators are not subject to the provisions of Article II(B)(2) and (3) which require that employers first seek workmen from the appropriate union.[4]
 
 
 14
 Any anti-competitive effect in the case at hand arises from a collective bargaining agreement between the appellees, Local 36 and the trade associations. In Connell, the objectionable effect arose from a separate, non-collective bargaining agreement. The difference is significant.
 
 In Connell, the Court said:
 
 15
 There can be no argument in this case, whatever its force in other contexts, that a restraint of this magnitude might be entitled to an antitrust exemption if it were included in a lawful collective-bargaining agreement. Cf. UMW v. Pennington, supra, 381 U.S. at 664-665, 85 S.Ct. 1585; Jewel Tea, supra, 381 U.S. at 689-690, 85 S.Ct. 1596 (opinion of Mr. Justice White); id. at 709-713, 732-733, 85 S.Ct. 1596 (opinion of Mr. Justice Goldberg). . . .
 
 
 16
 421 U.S. at 625-26, 95 S.Ct. at 1836.
 
 
 17
 Connell is distinguishable. If Connell is not controlling, we must fall back to the non-statutory exemption established in Jewel Tea. In Connell, the Court recognized that exemption, but found it inapplicable to that case because it concluded that the union had used direct restraints on the product market. 421 U.S. at 623, 95 S.Ct. 1830.
 
 In Jewel Tea, Justice White said:
 
 18
 Employers and unions are required to bargain about wages, hours and working conditions, and this fact weighs heavily in favor of antitrust exemption for agreements on these subjects. But neither party need bargain about other matters and either party commits an unfair labor practice if it conditions its bargaining upon discussions of a nonmandatory subject. . . .
 
 
 19
 381 U.S. at 689, 85 S.Ct. at 1601 (citation omitted).[5]
 
 In Bodine Produce, this court said:
 
 20
 It is obvious that Mr. Justice White sought to immunize from antitrust liability collective bargaining agreements that pertained to subjects either made mandatory bargaining items under the National Labor Relations Act, or topics intimately related to such items, so long as the agreements were "not at the behest of or in combination with nonlabor groups."
 
 
 21
 494 F.2d at 553.
 
 
 22
 Here, the MLA is a valid collective bargaining agreement. The appellants have not argued otherwise. The MLA pertains to wages, hours and working conditions. These are mandatory bargaining subjects. Thus, the MLA, by itself, does not violate the federal antitrust laws.
 
 C. Sufficiency of the amended complaint
 
 23
 Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The district court granted Local 36's motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6) of the Federal Rules of Civil Procedure.
 
 
 24
 For purposes of review, the well-pleaded facts alleged in the complaint must be accepted as true. Reimche v. First National Bank of Nevada,512 F.2d 187 (9th Cir. 1975); Walling v. Beverly Enterprises, 476 F.2d 393, 395 (9th Cir. 1973); 2A Moore's Federal Practice P 12.08 at 2266 (2d ed. 1975). The standard of review is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Bodine Produce, 494 F.2d at 556.
 
 
 25
 The appellants charge in their amended complaint that the appellees have combined and conspired
 
 
 26
 (A) To fix and maintain the price which plaintiffs may charge defendants for their services in the Southern District of California;
 
 
 27
 (B) To enter into an agreement, (Article XVI-C of the MLA), which fixes and maintains the price which plaintiffs may charge defendants for their services in the Southern District of California;
 
 
 28
 (C) To eliminate the plaintiffs as competitors in the Southern District of California;
 
 
 29
 (D) To enter into an agreement, (Article XVI-C of the MLA), to eliminate the plaintiffs as competitors in the Southern District of California;(E) To restrain defendants members from doing business with the plaintiffs members;
 
 
 30
 (F) To enter into an agreement, (Article XVI-C of the MLA), to restrain defendants from doing business with the plaintiffs members;
 
 
 31
 (G) To boycott the plaintiffs; and
 
 
 32
 (H) To enter into an agreement, (Article XVI-C of the MLA), to boycott the plaintiffs.
 
 
 33
 Amended Complaint P 15.
 
 
 34
 The allegations relating to the MLA fail to state a claim under the law discussed supra. The appellants do generally aver that the appellees have unlawfully combined and conspired by other means. These allegations, however, are very broad and vague.
 
 
 35
 Rule 8(a)(2) requires that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. at 47, 78 S.Ct. at 103. Accord Bodine Produce, 494 F.2d at 556; 2A Moore's Federal Practice P 8.13 (2d ed. 1975). The court concludes that the amended complaint fails to adequately inform the appellees of the appellants' claim of a combination or conspiracy aside from the MLA. Therefore, we reverse and remand to the district court with instructions that the appellants have leave to further amend their complaint to state a cause of action based upon a conspiracy or contract other than the MLA.
 
 
 36
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Dick Yin Wong, United States District Judge, District of Hawaii, sitting by designation
 
 
 [1]
 Jurisdiction in the district court could also have been predicated upon 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust). The appellants alleged jurisdiction under 28 U.S.C. §§ 2201-02. These sections simply create remedies; they are not independent bases for federal jurisdiction. Skelly Oil Co. v. Phillips Petroleum, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Smith v. Grimm, 534 F.2d 1346, 1349 n. 2 (9th Cir. 1976)
 
 
 [2]
 Article XVI-C(Q) of the MLA states, inter alia, that
 (w)hen a truck or piece of equipment is driven or operated by it's (sic) owner and is used on work covered by this Agreement, the Owner-Driver or operator of said truck, or piece of equipment shall receive a rate of pay not less than that specified in this Agreement and he shall be subject to the terms and conditions of this Agreement.
 
 
 [3]
 Article XVI-C(B)(1) of the MLA provides that
 (t)he EMPLOYER may obtain trucks or equipment from any source, however, the operators on such trucks or equipment will be properly cleared before starting work on the second day. The Owner-Operators of such trucks or equipment must furnish proof of legal or registered ownership. In order for the Owner-Operator to be properly cleared, he must present himself and proof of legal or registered ownership at the UNION's office, and once properly cleared, such clearance is valid in San Diego County until there is a change in the Owner-Operator's equipment status.
 
 
 [4]
 Article XVI-C(B)(3) of the MLA says, inter alia, that
 the Owner-Operator shall not be subject to the provisions of Paragraph B-1, 2, 3, 4, 4(a), 4(b), 4(c) and B-5, 5(a), 5(b), of Article II of this Agreement.
 Article II(B)(2) provides that
 (t)he EMPLOYER shall first call upon the respective local UNION(s) or their agents having work and area jurisdiction for such men as they may from time to time need, and the respective local UNION(s), or their agents, shall furnish to the EMPLOYER(s) the required number of qualified and competent workmen and skilled mechanics of the classifications needed by the EMPLOYER(s).
 Article II(B)(3) requires that
 (r)easonable advance notice, but not less than twenty (20) hours, will be given by the EMPLOYER(s) to the UNION(s) or its agents upon ordering such workmen or mechanics; and in the event that twenty-four (24) hours after such notice has expired, the UNION(s) or its agents fail to furnish such skilled and competent workmen, the EMPLOYER(s) may procure workmen from any other source or sources. If men are so employed, the EMPLOYER(s) will immediately report each such workman by name to the UNION(s) or its agents.
 
 
 [5]
 Justice Goldberg, advocating a broad exemption, suggested that
 the Court should hold that, in order to effectuate congressional intent, collective bargaining activity concerning mandatory subjects of bargaining under the Labor Act is not subject to the antitrust laws. This rule flows directly from the (United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1940)) holding that a union acting as a union, in the interests of its members, and not acting to fix prices or allocate markets in aid of an employer conspiracy to accomplish these objects, with only indirect union benefits, is not subject to challenge under the antitrust laws. . . .
 381 U.S. at 710, 85 S.Ct. at 1614.