John X. WEGMANN, III, et al.,
Plaintiffs-Appellants,

v.

Howard M. LONDON, et al.,
Defendants-Appellees.

No. 80–3463.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 26, 1981.

Anthony M. DiLeo, Wayne J. Lee, New Orleans, La., for plaintiffs-appellants.

McGlinchey, Stafford, Mintz & Hollman, B. Franklin Martin, III, Maureen O'Connor Sullivan, New Orleans, La., for defendants-appellees.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS,* District Judge.

GEE, Circuit Judge:

Plaintiffs, the six New Orleans partners in a national accounting firm, brought this suit against the other partners in the firm, all citizens of states other than Louisiana, and the firm itself for, inter alia, a declaration that certain provisions in the firm partnership agreement violate section 1 of the Sherman Act. The provisions that plaintiffs found objectionable, which appear in article 17 of the agreement, govern withdrawal from the partnership. Article 17(B)

* District Judge of the Western District of Texas, sitting by designation.

provides that if an equity partner—essentially an individual who joined the firm as a partner—withdraws from the firm and at any time within five years thereafter directly or indirectly serves any client that was served by the firm at the time of his withdrawal, he must pay the firm with respect to each such client an amount equal to the greater of (a) 100 percent of the fees earned from the client by the firm during the twelve months preceding his (post-withdrawal) commencement of service to the client and (b) 100 percent of the fees earned from the client by him (or any entity with which he is associated) during the first year he serves the client following his withdrawal from the firm. Under article 17(C) of the agreement, income partners—basically those promoted to partnership—who withdraw from the firm and within two years thereafter serve a client served by the firm at the time of their withdrawal must pay the firm 200 percent of the fees earned from the client by the firm during the twelve months preceding their (post-withdrawal) commencement of service to the client. According to plaintiffs, these provisions impose a substantial and unreasonable restraint on the ability of former partners to compete with the firm and therefore contravene section 1 of the Sherman Act.[1] Although plaintiffs were partners in the firm at the time they filed this suit, they officially withdrew from the firm less than four months thereafter.

The district court dismissed the suit for want of subject-matter jurisdiction. The court first found that diversity jurisdiction was lacking because a partnership is deemed to be a citizen of the states of each of its partners; plaintiffs were partners in the firm at the time they filed the suit; and the firm, which was named as a defendant for purposes of plaintiffs' state law claims, was therefore a citizen of the same state as plaintiffs, thereby destroying complete diversity. While plaintiffs had amended their complaint following their withdrawal from the firm to reflect the fact of their withdrawals, the court held this amendment ineffective to confer diversity jurisdiction because such jurisdiction is determined by the status of the parties at the time a suit is filed. The court also ruled that jurisdiction was lacking under 28 U.S.C. §§ 1331, 1337[2] because the Sherman Act does not reach the contract clauses plaintiffs sought to have invalidated. Whether the court correctly decided the nonexistence of diversity jurisdiction is a question we need not address because we find that the court incorrectly concluded that jurisdiction did not obtain under sections 1331 and 1337.

■ Section 1 of the Sherman Act proscribes contracts that unduly restrain trade, e.g., *United States v. American Tobacco Co.*, 221 U.S. 106, 179, 31 S.Ct. 632, 648, 55 L.Ed. 663 (1911), and plaintiffs here claim there is just such a contract. Thus, unless there is controlling case law declaring that the particular types of provisions of which plaintiffs complain are legal per se, so that plaintiffs' claim to the contrary is "frivolous" under *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), the court had subject-matter jurisdiction to hear the complaint. There is no such case law. The contract clauses to which plaintiffs object are, given the prohibitive magnitudes of liquidated damages they specify, de facto covenants not to compete with respect to clients of the firm, and a significant number of cases have considered on the merits under section 1 the reasonableness of covenants not to compete in the employment context. *See, e.g., Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1082 (2d Cir. 1977) (covenant not to compete after withdrawal from a partnership is subject to review for reasonableness and over-

---

1. Under section 1, subject to certain provisos not relevant here, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

2. Section 1331 is the general federal question jurisdiction statute. Section 1337 ordains that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

breadth under section 1 of the Sherman Act; in general, "employment agreements not to compete are proper subjects for scrutiny under section 1"), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United States v. Empire Gas Corp.*, 537 F.2d 296, 307–08 (8th Cir. 1976), *cert. denied*, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977); *Frackowiak v. Farmers Insurance Co.*, 411 F.Supp. 1309 (D. Kan. 1976); *Lektro-Vend Corp. v. Vendo Co.*, 403 F.Supp. 527 (N.D.Ill. 1975), *aff'd*, 545 F.2d 1050 (7th Cir. 1976), *rev'd on other grounds*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Kapp v. National Football League*, 390 F.Supp. 73 (N.D. Cal. 1974), *aff'd*, 586 F.2d 644 (9th Cir. 1978), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979); *Alders v. AFA Corp.*, 353 F.Supp. 654 (S.D. Fla. 1973), *aff'd*, 490 F.2d 990 (5th Cir. 1974) (unpublished opinion). This court, moreover, has expressly reviewed on the merits a claim that a contractual forfeiture of pension rights upon employment by a competitor violated section 1. *Golden v. Kentile Floors, Inc.*, 512 F.2d 838 (5th Cir. 1975).[3] We conclude, therefore, that plaintiffs stated a claim cognizable under the Sherman Act and hence 28 U.S.C. §§ 1331, 1337.[4]

■ Defendants seek to support the district court's finding of no jurisdiction by arguing that plaintiffs primarily request only a declaratory judgment that they are not bound by a contract because it violates antitrust law; that, absent the Declaratory Judgment Act, plaintiffs' antitrust claim would actually be only an anticipatory federal defense to a state law breach of con-

tract claim by defendants; that such a defense does not confer federal jurisdiction; and that the Declaratory Judgment Act does not expand federal jurisdiction. We cannot, however, accept this argument. First, defendants cite no authority where such an argument has prevailed with regard to the antitrust laws. At least two courts of appeals, moreover, have reached a result exactly contrary to defendants' position. *South Side Theaters, Inc. v. United West Coast Theaters Corp.*, 178 F.2d 648, 651 (9th Cir. 1949) ("An action in which the court is asked to declare a contract illegal under the Sherman Act and that the defendants are engaged in unlawful restraint of trade presents a federal question sufficient to give a district court jurisdiction."); *Rambusch Decorating Co. v. Brotherhood of Painters*, 105 F.2d 134, 136 (2d Cir.) ("The petition for a declaration of illegality of a contract under the anti-trust laws and of unlawful restraint of interstate trade by the defendant … present[s] a federal question adequate to give the District Court jurisdiction"), *cert. denied*, 308 U.S. 587, 60 S.Ct. 110, 84 L.Ed. 492 (1939); *see A. S. Abell Co. v. Chell*, 412 F.2d 712 (4th Cir. 1969); *Alders v. AFA Corp.*, 353 F.Supp. 654 (S.D.Fla. 1973), *aff'd*, 490 F.2d 990 (5th Cir. 1974) (unpublished opinion). Finally, plaintiffs amended their complaint to request an injunction preventing defendants from enforcing article 17 against them, and 15 U.S.C. § 26 expressly authorizes private parties to seek injunctive relief "against threatened loss or damage by a violation of the antitrust laws."[5] Since plaintiffs con-

3. *But cf. Austin v. House of Vision, Inc.*, 404 F.2d 401 (7th Cir. 1968) (suit to invalidate under antitrust laws a profit-sharing plan provision calling for forfeiture of certain interests upon employment with a competitor dismissed for failure to state a claim because, for example, plaintiff did not allege injury to competition).

4. The district court's opinion might be read as a dismissal for failure to state a claim upon which relief can be granted—a decision on the merits. Such a decision, however, would be premature. Plaintiffs have not yet, for example, had an opportunity to show that the provisions of article 17 are unduly injurious to competition and therefore unreasonable restraints

of trade under sec. 1. *See Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1082 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United States v. Empire Gas Corp.*, 537 F.2d 296, 308 (8th Cir. 1976), *cert. denied*, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977).

5. The full text of section 26 is as follows:
Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and

tended that article 17 violates section 1, their request for injunctive relief from enforcement of that article is cognizable under section 26, and not only does that request confer ancillary jurisdiction on the court to render declaratory relief as well, but it may largely obviate the need for such relief.

The decision of the district court is therefore

REVERSED and REMANDED.

under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided,* That nothing herein con-

tained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission.