JAMES R. BROWNING, Chief Judge:
Appellant unions brought suit against appellee employers alleging that a “most-favored nations” clause in their collective-bargaining agreement violates the antitrust laws. The unions sought a judgment declaring the clause illegal and enjoining its enforcement. The district court dismissed on the ground that the unions lacked standing to challenge the agreement under the antitrust laws. We affirm dismissal of the unions’ claim for injunctive relief, but reverse dismissal of the prayer for declaratory relief.
I.
Appellants are local unions representing retail food clerks employed in southern California supermarkets. Appellees (referred to collectively as “the Council”) are the major supermarket chains in that area, a trade association representing these supermarkets for collective-bargaining purposes, and the president of the association.
*521 In mid-1984, the unions and the Council negotiated a collective-bargaining agreement (the Master Food Agreement) containing a most-favored nations clause. This clause provided that if a local union agreed with an independent grocery chain on terms or conditions of employment more favorable than those in the Master Food Agreement, any grocery-chain party to the Agreement could adopt these more favorable terms and conditions in its stores in the relevant local area. Continuation of terms and conditions in an existing agreement between a union and an independent grocery chain was permitted as long as the independent did not add more than one store to its chain. Also, the most-favored nation clause did not apply to chains having fewer than 101 employees providing no single store employed more than 25 employees.
The allegations of the complaint, briefly summarized, are as follows. After learning that independent grocery chains having labor contracts with appellant unions had formed their own association, the Council informed the unions that the Master Food Agreement then in negotiation must include a most-favored nations clause. The unions objected on the ground that such an agreement “would involve the unions in an antitrust conspiracy with the defendants to drive out of business and otherwise competitively disadvantage” the independent grocery chains.
The unions explained to the Council that “the inevitable effect of the clause would be that the unions could not, as they had done in the past, grant more favorable terms to independent food companies that may be in need of such terms to remain viable competitors.” They further explained that under the proposed clause a reduction in wages in all stores would follow if the unions granted a concession to an independent, and for this reason it would be “a practical impossibility for the unions to grant smaller independent employers the terms they needed to remain in business.” The unions therefore sought an exception “for employers whose financial condition would not allow them to pay the Master Food Agreement rates and still stay in business.” The Council refused. The unions nonetheless agreed to the clause because they felt compelled to do so to avoid a strike.
The complaint further alleged that the purpose and inevitable effect of the most-favored nations clause was to force the smaller independent chains to accept the terms of the Master Food Agreement regardless of their ability to pay, and to impose higher average labor costs upon them because of the difference between their operating methods and those of the larger chains. “Thus,” the complaint alleged, “the clause allows defendants collectively to impose terms and conditions of employment on their unionized independent competitors that give defendants a substantial competitive advantage in terms of labor costs.” The clause also had the effect of deterring increased competition by independents because they would lose existing favorable contracts with the unions if they increased the number or size of their stores.
Since the Master Food Agreement became effective independent chains have sought more favorable terms as “necessary for them to remain viable,” but. the unions have been unable to negotiate such agreements because of the clause. Strikes have occurred and more could occur. An independent chain has filed an unfair labor practice charge against three of the local unions for refusing to negotiate with the chain as an independent economic entity. Other independent chains have threatened to sue the unions for treble damages on the ground the clause violates the antitrust laws.
The unions allege the most-favored nations clause violates section 1 and section 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. They seek declaratory relief under 28 U.S.C. § 2201 and injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26, and under 28 U.S.C. § 2202.[1]
*522 The district court dismissed on the ground that under Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the unions lacked standing to obtain relief under the antitrust laws because they were neither competitors nor customers in the market allegedly restrained, and an elimination of competition in that market did not directly injure them; and because the independent chains allegedly injured were more appropriate persons to bring an antitrust action.
II.
The unions concede they did not suffer “antitrust injury,” as that term is defined in Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), and therefore could not sue for treble damages under Section 4 of the Clayton Act. Although the unions have not expressly abandoned their claim that they have standing to seek injunctive relief under 15 U.S.C. § 26, they offer nothing in their briefs on appeal to support reversal of the district court’s hold-
ing that they also lacked standing to seek this relief, and we decline to consider the question.[2]
The only substantial question before us is whether the unions have a remedy under the Declaratory Judgment Act to determine the validity under the antitrust laws of the most-favored nations clause in their collective-bargaining agreement with the Council, or whether they are barred from this remedy because they lack standing to sue the Council for treble damages under the antitrust laws. We consider first the language and purpose of the Act.
A.
The plain language of the Declaratory Judgment Act entitles the unions to such a remedy. The Act provides- that any court of the United States “[i]n a case of actual controversy within its jurisdiction ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.” 28 U.S.C. § 2201.
The Council apparently concedes the unions’ suit involves a “case of actual controversy.” [3] The unions have insisted from *523 the beginning that the most-favored nations clause violates the antitrust laws; the Council has insisted it does not. The parties persisted in their conflicting legal positions to the verge of industrial conflict, and continue to adhere to them. The unions’ interest in being relieved of the clause is evident: according to the complaint, the clause is the source of continuing difficulty in union negotiations with independent chains, of threats of administrative challenge under the labor laws, and of threats of treble-damage litigation under the antitrust laws. There is no suggestion that the Council’s interest in preserving the clause has diminished: the clause assures the chains that are parties to the agreement that none will gain an advantage in labor costs over the others, and apparently gives chains that are party to the agreement significant competitive advantages over independent chains. Thus, “the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). See also National Basketball Ass’n. v. SDC Basketball Club, Inc., 815 F.2d 562, 565 (9th Cir.1987); Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir.1986).
The unions’ suit was clearly “within [the district court’s] jurisdiction.” As this court recently said: “When a declaratory judgment plaintiff asserts a claim that is in the nature of a defense to a threatened or pending action, the character of the threatened or pending action determines whether federal jurisdiction exists with regard to the declaratory judgment action. ‘If ... the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights,’ jurisdiction exists for declaratory relief.” Levin Metals Corp. v. Parr-Richmond Terminal Co., 799 F.2d 1312, 1315 (9th Cir.1986) (citations omitted) (emphasis in original). See also Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 19, 103 S.Ct. 2841, 2851, 77 L.Ed.2d 420 (1983). A suit by the Council against the unions to enforce the most-favored nation clause in the collective-bargaining agreement would have been within the district court’s jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77, 102 S.Ct. 851, 856, 70 L.Ed.2d 833 (1982); Associated Milk Dealers, Inc. v. Milk Drivers Union, Local 753, 422 F.2d 546, 552 (7th Cir.1970); Avco Corp. v. Aero Lodge No. 735, Int’l Ass’n of Machinists, 376 F.2d 337, 339-40 (6th Cir.1967), aff'd 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); see also Franchise Tax Bd., 463 U.S. at 23, 103 S.Ct. at 2853; Caterpillar Inc. v. Williams, — U.S. -, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).[4] The district court therefore had jurisdiction over this action to obtain a declaration that the clause is illegal. See El Paso Bldg. & Constr. Trade Council v. El Paso Chapter Associated Gen. Contractors, 376 F.2d 797, 800 (5th Cir.1967).
Finally, considering only the language of the Declaratory Judgment Act, the remedy it grants is available “whether or not further relief ... could be sought.”
B.
Turning to the purposes of the Act, the unions’ allegations present precisely the problem the declaratory remedy was intended to solve.
The unions believe the most-favored nation clause is invalid, but cannot be certain. They are concerned that if they negotiate more favorable terms with one or more independents, their members may suffer a loss of wages or other benefits — or they may be sued for breach and, if the clause is determined to be valid, may be required to pay damages. If they refuse to negotiate *524 with independent chains, they may be charged with an unfair labor practice or sued for violating the Sherman Act and, if the clause is determined to be invalid, may be found guilty and required to pay treble damages. The Declaratory Judgment Act “was enacted to afford an added remedy to one who is uncertain [of] his rights and who desires an early adjudication without having to wait until he is sued by his adversary.” Levin Metals Corp. v. Parr-Richard Terminal Co., 799 F.2d 1312, 1315 (9th Cir.1986) (citations omitted). The remedy available under the Act “is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued____ It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.” 10A C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure § 2751, at 569-71 (2d ed. 1983) (footnotes omitted).
C.
The unions have standing to bring an action to secure the remedy the Declaratory Judgment Act provides. As we have seen, the complaint alleges the most-favored nations clause injures the unions because it hampers their negotiations with independent chains and creates uncertain legal liability; a declaration that the clause is illegal would redress these injuries; and the unions are within the class of persons the Declaratory Judgment Act was intended to protect. See Allen v. Wright, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); Valley Forge Christian College v. Americans United For Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). If standing is derivative under the Declaratory Judgment Act, like jurisdiction, the unions had standing to bring suit on the collective-bargaining agreement under § 301 of the Labor Management Relations Act. See International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 700, 86 S.Ct. 1107, 1110, 16 L.Ed.2d 192 (1966); Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc., 327 F.2d 442, 445 (9th Cir. 1964).[5]
III.
We are not convinced that an action to determine the lawfulness of a contractual provision that is so clearly within the language and purpose of the Declaratory Judgment Act should be barred nonetheless because the plaintiff could not sue for treble damages or injunctive relief under the antitrust laws.
Such a result, as we have noted, would be inconsistent with the provision of the Act that the rights of a party are to be declared “whether or not further relief is or could be sought.” 28 U.S.C. § 2201 (emphasis added). Imposing restrictions and limitations borrowed from existing, separate remedies upon the relief authorized by the Declaratory Judgment Act would not serve the Act’s purposes. The Act created “a new remedy”; it expanded the judicial process “by putting a new implement at the disposal of the courts.” 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2751, at 569 (2d ed. 1983). It would be inconsistent with the remedial purpose of the Act to imply an exception to the Act’s coverage without substantial reason. Levin Metals Corp., 799 F.2d at 1316; Workman v. Mitchell, 502 F.2d 1201, 1206 n. 6 (9th Cir.1974); Gillette Co. v. “42” Products Ltd., 435 F.2d 1114, 1118 (9th Cir.1970).
No such reason has been suggested for refusing to allow a party to a contract to obtain a judicial determination whether an agreement to which he is a party does or *525 does not violate the antitrust laws. Such a suit does not present the problems that led the Supreme Court to limit the persons who might sue for treble damages under the antitrust laws. It does not open the courts to an indefinite and limitless pool of potential litigants — the universe of potential plaintiffs is limited to the number of parties to the agreement. It does not create a potential for duplicative recoveries, or pose complex problems of ascertaining and apportioning damages, Associated Gen. Contractors, 459 U.S. at 543-45, 103 S.Ct. at 911-12; and there is no better person to bring suit to declare the rights and obligations of parties to a contract than one of the parties himself. Compare id. at 541-42, 103 S.Ct. at 910-11.
The Supreme Court held long ago that a party sued to enforce a contract, or to respond in damages for breach, could defend on the ground that the contract was invalid under the antitrust laws. See Bement v. National Harrow Co., 186 U.S. 70, 87-88, 22 S.Ct. 747, 753-54, 46 L.Ed. 1058 (1902).[6] The Court reaffirmed this holding in Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 81-82 & n. 7, 102 S.Ct. 851, 858 n. 7, 70 L.Ed.2d 833 (1982). See also Associated Milk Dealers, Inc. v. Milk Drivers Union, Local 753, 422 F.2d 546, 552 (7th Cir.1970). In Kaiser, the Court rejected the contention that “the express remedies provided by the Sherman Act are not to be added to by including the avoidance of a contract as a sanction” (an argument analogous to that advanced by the Council in this case), noting that “[a] defendant proffering the defense seeks only to be relieved of an illegal obligation and does not ask any affirmative remedy based on the antitrust or labor laws.” 455 U.S. at 81 & n. 7, 102 S.Ct. at 858 n. 7.
The Council acknowledges that antitrust illegality can constitute a defense to performance of a contract but argues it cannot support an action brought by a contracting party as plaintiff. As we have seen, one of the primary purposes of the Declaratory Judgment Act is to enable a party to a contract to determine the legitimacy of a defense based on the illegality of the contract without waiting to be sued. In seeking a declaration of the legality of the most-favored nations clause in the collective-bargaining agreement in this case, the unions “seek[ ] only to be relieved of an illegal obligation and [do] not ask any affirmative remedy based on the antitrust or labor laws.” There is no apparent reason not to allow a party to a contract to test through declaratory-judgment proceedings a defense that could be offered in a coercive suit, as long as the threat of a coercive suit based on breach of contract is real — a condition not questioned in this case.
Such a rule obviously furthers the purposes of the Declaratory Judgment Act. It also serves the purposes of the antitrust statutes, allowing parties to agreements of questionable legality under those laws to avoid an obligation that would otherwise compel them to violate the antitrust laws with consequent injury to competition and to the public good. As the unions point out, the option they chose was the least destructive of those available. If they had refused to agree to the most-favored nations clause because of its possible illegality, a strike might have ensued with loss to the parties and the public, even though the unions might be mistaken and the clause might be lawful. If the unions had agreed to the clause without more, competition might have been restrained contrary to the purpose of the antitrust laws; and independent chains injured by the clause might *526 have sued the unions and recovered treble damages if the clause were found to be unlawful under the antitrust laws. Only the third option of agreeing to the clause but promptly seeking a declaration as to its legality allowed the parties to enter into a possibly legal agreement while minimizing the risk of liability if the agreement proved to be unlawful. This option may increase the amount of litigation of this kind, but it proportionally decreases other litigation and avoids potential private and public injuries that would result in the absence of a judicial declaration.
Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 . (1975), is just such a suit — a declaratory judgment action by a general contractor challenging the legality under the Sherman Act of an agreement between the contractor and a union. The appropriateness of such a suit appears not to have been questioned. The same is true in National Basketball Association v. SDC Basketball Club, Inc., 815 F.2d 562 (9th Cir.1987), a declaratory judgment action by the National Basketball Association against one of its franchisees to determine whether the Association would violate the antitrust laws if it enforced an article of an agreement between the Association and its members requiring that the Association’s approval be obtained before a franchise was moved. See also Wegmann v. London, 648 F.2d 1072 (5th Cir., 1981); A.S. Abell Co. v. Chell, 412 F.2d 712 (4th Cir.1969).
No case to the contrary has been cited. The Council relies upon three cases: Transource International, Inc. v. Trinity Industries, Inc., 725 F.2d 274 (5th Cir.1984), Western Geophysical Company of America, Inc. v. Bolt Associates, Inc., 584 F.2d 1164 (2nd Cir.1978), and Beckenstein v. Hartford Electric Light Company, 479 F.Supp. 417 (D.Conn.1979), but none of these cases was brought under the Declaratory Judgment Act or involved a defense of illegality in a suit to enforce a contract or recover damages for its breach.
We conclude the district court erred in holding the unions’ lack of “antitrust standing” precluded the unions’ suit under the Declaratory Judgment Act for a declaration of their legal rights and obligations under the clause in their contract with the Council. We do not, of course, decide whether this is an appropriate case for the exercise of the district court’s discretionary powers under the Declaratory Judgment Act. Doe v. Gallinot, 657 F.2d 1017, 1024-25 (9th Cir.1981).[7]
REVERSED AND REMANDED.

. The Council argues that when "the antitrust gloss is stripped from the unions’ complaint,” all that remains is a charge that the Council committed an unfair labor practice by bargaining to *522 impasse on an allegedly non-mandatory subject, and this claim should be addressed to the National Labor Relations Board. However, the complaint alleged a violation of the Sherman Act, albeit one that might involve a violation of the National Labor Relations Act as well. Such a suit is not within the exclusive primary jurisdiction of the Board. See Connell Constr. Co. v. Plumbers and Steamfitters Local Union No. 100, 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975); Local Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 684-88, 85 S.Ct. 1596, 1599-1601, 14 L.Ed.2d 640 (1965) (opinion of White, J.); id. at 710 n. 18, 85 S.Ct. at 1614 n. 18 (opinion of Goldberg, J.); California Dump Truck Owners Ass’n, Inc. v. Associated Gen. Contractors, 562 F.2d 607, 609-10 (9th Cir.1977). The district court "may decide any labor law questions that emerge as collateral issues in suits brought under ... the antitrust laws.” Connell, 421 U.S. at 626, 95 S.Ct. at 1837. California Dump Truck, 562 F.2d at 609-10.
Whether the most-favored nations clause violates the Sherman Act is not before us. The unions' argument that it does rests upon United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) and Ramsey v. United Mine Workers, 401 U.S. 302, 91 S.Ct. 658, 28 L.Ed.2d 64 (1971).

. The unions reiterate their request for injunctive relief in the “Question Presented" section and last paragraph of their brief. They offer nothing to support the request, except one footnote citing cases for the general proposition that "Section 16 [of the Clayton Act] has been applied more expansively than has section 4 ..." and therefore “ ‘antitrust injury’ is not required for antitrust standing under Section 16.” Rule 28(a)(4) of the Federal Rules of Appellate Procedure requires that "[t]he brief of the appellant shall contain ... [a]n argument____ The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.” Fed.R.App.P. 28(a)(4). "Issues raised in a brief which are not supported by argument are deemed abandoned." United States v. Loya, 807 F.2d 1483, 1487 (9th Cir.1987) (citation omitted); see also United States v. Newton, 443 F.2d 1078 (9th Cir.1971).

. The requirement of a “case of actual controversy” in the Act is no more than the Constitution otherwise requires. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937).

. It has also been held that federal question jurisdiction exists whenever a court is asked to declare any contract illegal under the Sherman Act. South Side Theatres v. United West Coast Theatres Corp., 178 F.2d 648, 651 (9th Cir.1949); Wegmann v. London, 648 F.2d 1072 (5th Cir., 1981); A.S. Abell Co. v. Chell, 412 F.2d 712, 716 (4th Cir. 1969).

. We therefore need not consider whether derivative standing under the Declaratory Judgment Act could be based upon the asserted involvement of the antitrust laws.

. The Court in Bement rejected the argument that the antitrust defense was not available to a party who could not have instituted a suit under the antitrust laws:
The plaintiff contends in the first place that only the Attorney General of the United States can bring an action under the statute, excepting that by section 7 of the act any person injured in his business or property, as provided for therein, may himself sue in any Circuit Court of the United States, in the district in which the defendant resides or is found. Assuming that the plaintiff is right so far as regards any suit brought under that act, we are nevertheless of opinion that any one sued upon a contract may set up as a defence that it is a violation of the act of Congress, and if found to be so, that fact will constitute a good defence to the action.
186 U.S. at 87-88, 22 S.Ct. at 753-54.

. We also do not consider whether injunctive relief may be available under the provisions of the Declaratory Judgment Act that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted ... against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. That question will arise only if the district court eventually grants declaratory relief. Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir.1986).