682 F.2d 807
 110 L.R.R.M. (BNA) 3229, 95 Lab.Cas. P 13,735,
3 Employee Benefits Ca 1989
 Edward BROGAN, et al., Trustees for Painters Trust, and
Wayne Blanchard, et al., Trustees for Western Washington
Painters Pension Trust, and David Beeson, et al., Trustees
for the Western Washington Apprenticeship and Training
Trust, Plaintiffs-Appellants,
v.
SWANSON PAINTING CO., a Washington corporation; Swan Swanson
and Diane Swanson, husband and wife; United
Pacific Insurance Company, Defendants-Appellees.
 No. 79-4226.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 3, 1981.
Submission Vacated Feb. 25, 1982.
Resubmitted June 26, 1982.
Decided July 27, 1982.
 
 John Ranquet, Seattle, Wash., for plaintiffs-appellants.
 William B. Moore, Ferguson & Burdell, Seattle, Wash., for defendants-appellees.
 Before SCHROEDER and ALARCON, Circuit Judges, and PATEL,* District Judge.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is an action by trustees of three employee fringe benefit trust funds of the Painting and Drywall Industry in western Washington. The trustees seek contributions from the appellee, Swanson Painting Company, which was signatory to an industry collective bargaining agreement and which subcontracted work to a nonsignatory contractor in violation of the subcontractor provisions of those agreements.[1] The action was filed under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.
 
 
 2
 The district court granted summary judgment for Swanson, holding that because Swanson had already paid directly to the non-union employees amounts equivalent to the trust fund contributions,[2] payments to the funds would constitute a "penalty" for dealing with non-union contractors and would violate the secondary activities provisions of § 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e).[3] In support of the district court's judgment, appellees rely upon Connell Construction Co. v. Plumbers Local No. 100, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975), and urge that the clause requiring payment of the contributions violates the antitrust laws. We reverse in light of the Supreme Court's recent decision in Woelke & Romero Framing, Inc. v. NLRB, --- U.S. ----, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982), aff'g Pacific Northwest Chapter of Associated Builders & Contractors, Inc. v. NLRB, 654 F.2d 1301 (9th Cir. 1981) (en banc).
 
 
 3
 There is no dispute in this appeal as to the meaning of the subcontractor clauses in the agreements or their legality under § 302(a)(1) of the Labor Management Relations Act, 29 U.S.C. § 186(a)(1), which forbids payments by employers to employee representatives.[4] The parties agree that the subcontractor clauses, even though they do not so state in literal language, mean as a practical matter that if the subcontractor does not make contributions into the funds, the signatory contractor (Swanson) is liable for such contributions. Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1114-15 (9th Cir. 1979). See Trustees of Teamsters Local 13 v. Hawg N Action, Inc., 651 F.2d 1384, 1387 (10th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1433-34, 71 L.Ed.2d 652 (1982). Furthermore, the contract may be enforced by the trust funds themselves. Audit Services, Inc. v. Rolfson, 641 F.2d 757, 760 (9th Cir. 1981) (as amended).
 
 
 4
 Because of the proscription of § 302, the parties also agree that the contributions cannot be "on behalf of" the subcontractor's employees, but must be "measured by" the number of hours worked by such employees. The contributions would then be valid and enforceable under § 302 as interpreted by the Supreme Court in Walsh v. Schlecht, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977). Although the factual situation in Walsh is similar to that presented here, and although the Court in Walsh held the contributions valid, the Court there did not concern itself with the fact that the contractor had already paid the non-union employees an amount equivalent to the disputed contributions. The appellees here focus on these prior payments, and would have us characterize the payments to the funds now sought by the trustees as a "windfall" to the trusts and a "penalty" to themselves.
 
 
 5
 The contractor's cash payment of equivalent benefits to non-union employees does not, however, in itself, excuse the contractor's obligation to contribute to the trust funds. The courts have rejected the contractor's view, finding that the employer's obligation to pay into the trusts is "exactly what it contracted to do." Mullins v. Kaiser Steel Corp., 642 F.2d 1302, 1310-11 n.8 (D.C.Cir.1980), rev'd on other grounds, --- U.S. ----, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). As this court stated in Audit Services, Inc. v. Rolfson, 641 F.2d 757, 761 (9th Cir. 1981) (as amended),
 
 
 6
 (t)he payment of cash to nonunion employees, however well-intentioned such payment may have been, does not excuse the obligation to make contributions to the funds. The contract sued upon is between the union and the trustees on the one hand, and the employer on the other. The funds are established for the benefit of all employees covered by their language and are depleted by the amount which the (employer has) refused to contribute.
 
 
 7
 If the court did not require the employer to make trust fund payments upon the subcontractor's default, the trustees "would have no remedy for defendant's undisputed breach of contract." Hawg N Action, Inc., 651 F.2d at 1387. Accord, Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1114-15 (9th Cir. 1979); In re Swanson-Dean Corp., 61 L.A. 682, 686-87 (1977), enforced, 646 F.2d 376 (9th Cir. 1981) ("The (subcontracting) language accepted by the employer is analogous to that used in guarantor agreements, or agreements of indemnification, and it is our conclusion that the parties intended that the employer would pay if the subcontractor did not").
 
 
 8
 Swanson nevertheless argues further that enforcement of a clause aimed at preventing a contractor from dealing with non-union subcontractors is outside the ambit of protected secondary activity sanctioned by the construction industry proviso to § 8(e), and violative of the antitrust laws. Prior to the recent Supreme Court decision in Kaiser Steel Corp. v. Mullins, --- U.S. ----, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), we would have held that the district court could not in the first instance determine whether contributions would be an unfair labor practice under § 8(e). We would have held that the district court was without jurisdiction to resolve the question in the absence of a determination by the National Labor Relations Board. Castaneda v. Dura-Vent Corp., 648 F.2d 612, 616 (9th Cir. 1981); Waggoner v. Northwest Excavating, Inc., 642 F.2d 333, 338 n.2 (9th Cir. 1981), vacated, --- U.S. ----, 102 S.Ct. 1417, 71 L.Ed.2d 640 (1982) (in light of Kaiser Steel Corp. v. Mullins); Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc., 639 F.2d 487, 491 (9th Cir. 1980); Waggoner v. R. McGray, Inc., 607 F.2d 1229, 1235 (9th Cir. 1979). In Kaiser, however, the Supreme Court held that a federal court should not yield to the jurisdiction of the NLRB when, as here, the court is asked to determine whether the contract violates federal law before enforcing it under § 301:
 
 
 9
 Here a court must decide whether the (contract clause in question) violates § 8(e) in order to determine whether to enforce the clause.... Therefore, where a § 8(e) defense is raised by a party which § 8(e) was designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought, a court must entertain the defense. While only the Board may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violates § 8(e).
 
 
 10
 102 S.Ct. at 860 (citation omitted).
 
 
 11
 We therefore must determine whether this subcontractor clause is in violation of § 8(e) and the antitrust laws. Swanson relies upon Connell Construction Co. v. Plumbers Local No. 100, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975), which held that an agreement, "outside the context of a collective-bargaining relationship," which obligated a contractor to subcontract work only to firms that had a contract with the union, could be "the basis of a federal antitrust suit ...." Id. at 635, 95 S.Ct. at 1841.
 
 
 12
 Connell has been the subject of much debate and litigation concerning the extent to which it materially alters or creates new complexities in the relationship between the antitrust and labor relations laws. See, e.g., Donald Schriver, Inc. v. NLRB, 635 F.2d 859 (D.C.Cir.1980), cert. denied, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981); Granddad Bread, Inc. v. Continental Baking Co., 612 F.2d 1105 (9th Cir. 1979), cert. denied, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); California Dump Truck Owners Association, Inc. v. Associated General Contractors, 562 F.2d 607 (9th Cir. 1977); Handler & Zifchak, Collective Bargaining and the Antitrust Laws: The Emasculation of the Labor Exemption, 81 Colum.L.Rev. 459 (1981); St. Antoine, Connell: Antitrust Law at the Expense of Labor Law, 62 Va.L.Rev. 603 (1976).
 
 
 13
 That controversy has now been resolved, at least to the extent necessary to decide this case, by the Supreme Court's decision in Woelke & Romero Framing, Inc. v. NLRB, --- U.S. ----, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982), which affirmed in part and vacated in part this court's en banc decision in Pacific Northwest Chapter of Associated Builders & Contractors, Inc. v. NLRB, 654 F.2d 1301 (9th Cir. 1981). The Court in Woelke & Romero held that the construction industry proviso to § 8(e) shelters union signatory subcontracting clauses that are sought or negotiated in the context of a collective bargaining relationship. Examination of the statutory language and legislative history of § 8(e) led the Court to the conclusion that the subcontracting clause's creation of "top-down" pressure for unionization was acceptable so long as the clause was the product of collective bargaining:
 
 
 14
 Congress endorsed subcontracting agreements obtained in the context of a collective-bargaining relationship-and decided to accept whatever top-down pressure such clauses might entail. Congress concluded that the community of interests on the construction jobsite justified the top-down organizational consequences that might attend the protection of legitimate collective-bargaining objectives.
 
 
 15
 102 S.Ct. at 2081-82 (footnote omitted). The Court distinguished Connell on the ground that in that case no subcontracting clause had been negotiated through collective bargaining.
 
 
 16
 The holding of Woelke & Romero is clear and controls this case. The subcontracting clause here at issue was "sought or negotiated" in the context of a collective bargaining relationship. We therefore reverse the judgment of the district court and remand the case for further consideration of the trustees' claim.
 
 
 
 *
 Honorable Marilyn H. Patel, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Work by the non-union contractor in fact spanned a period covered by two different collective bargaining agreements: the 1968-71 agreement and the 1971-74 agreement. The relevant clauses in each agreement provided as follows:
 1968-1971 Agreement
 The employer agrees that in the subcontracting of any of the work of this bargaining unit, to be done at the site of the construction, alteration, painting or repair of a building, structure, or other work, the employer will do business only with the subcontractor who is bound, or who agrees to be bound, in writing, by all of the terms and provisions of this Agreement including the payment of all wages, and contributions to the Trusts. (Page 25, 1968 Western Washington Area Agreement)
 1971-1974 Agreement
 An employer who is party to this Agreement shall not subcontract any work covered by this Agreement to be done at a construction job site to any employer unless such employer is a party to a collective bargaining Agreement with the Union. (1971-1974 Western Washington Area Agreement, Page 9)
 
 
 [2]
 Payments were apparently prompted by the fact that the job in question was covered by the Davis-Bacon Act, 40 U.S.C. §§ 276a et seq., requiring a payment of "the prevailing wage." The Supreme Court's opinion in Walsh v. Schlecht, 429 U.S. 401, 411, 97 S.Ct. 679, 686, 50 L.Ed.2d 641 (1977), disposes of any contention that operation of the subcontractor clause cannot require payment by the contractor above the floor established by Davis-Bacon
 
 
 [3]
 Section 8(e), 29 U.S.C. § 158(e), provides in pertinent part:
 It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void: Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work....
 
 
 [4]
 Section 302(a)(1) of the LMRA prohibits payments by employers to "any representative of any of his employees ...." 29 U.S.C. § 186(a)(1). Sections 302(c)(5) and (6), however, make exceptions for payments, under written agreement, to trust funds created "for the sole and exclusive benefit" of employees and their families. See Music v. Western Conference of Teamsters Pension Trust Fund, 660 F.2d 400, 402 (9th Cir. 1981)