MAUI TRUCKING, INC.; Decoite Trucking, Inc.; and T.J. Gomes Trucking Co., Inc., Plaintiffs–Appellants,

and

General Contractors Labor Association and Labor Association of the Building Industry Association of Hawai'i, Plaintiffs–Intervenors–Appellees,

v.

OPERATING ENGINEERS LOCAL UNION NO. 3 INTERNATIONAL UNION OF OPERATING ENGINEERS AFL–CIO; Douglas Sado dba Doug's Trucking; Doug's Trucking Equipment & Repair, Inc.; Sado Trucking, Inc. dba Sado Trucking Co.; and Charles Barton dba C & N Trucking, Defendants–Appellees.

No. 92–15321.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1993.

Decided May 18, 1994.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Sept. 23, 1994.

Jeffrey S. Harris, Torkildson, Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington, Honolulu, HI, for plaintiffs–appellants.

Barry W. Marr and David P. Ledger, Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki, Honolulu, HI, for plaintiffs-intervenors-appellees.

T. Anthony Gill, Gill & Zukeran, Honolulu, HI, Marsha S. Berzon, Altshuler, Berzon, Nussbum, Berzon & Rubin, San Francisco, CA, and Barbara A. Petrus, Goodsill, Anderson, Quinn & Stifel, Honolulu, HI, for defendants-appellees.

Before: SNEED, POOLE, and TROTT, Circuit Judges.

## ORDER AMENDING OPINION and DENYING PETITION FOR REHEARING and REHEARING EN BANC

The opinion filed May 18, 1994, slip opinion page 5171, is amended as follows: [Editor's Note: Amendments incorporated for purposes of publication].

With these amendments, the panel has voted to deny the petition for rehearing. Judges Poole and Trott have voted to reject the suggestion for rehearing en banc, and Judge Sneed so recommends. The full court has been advised of the suggestion for rehearing en banc, and no active judge has requested such a vote. Fed.R.App.P. 35.

Accordingly, the petition for rehearing is denied, and the suggestion for rehearing en banc is rejected.

## OPINION

TROTT, Circuit Judge:

This lawsuit arises from a collective bargaining agreement ("Master Agreement") entered into in Hawaii by the Operating Engineers Local Union No. 3 ("Local No. 3") on one hand, and the General Contractors Labor Association and the Building Industry Labor Association ("Associations" or "General Contractors") on the other. Section 24E of this Master Agreement covers the subcontracting by the General Contractors of off-site work such as the hauling of construction materials to and from the General Contractors' job sites. With the alleged purpose of protecting the work and employment opportunities of all employees covered by the agreement, including the benefits of the Master Agreement itself, Section 24E requires the General Contractors to subcontract off-site work only to subcontractors who agree (1) to pay their employees a total wage and benefits package equal in value to the wage and benefits package payable under the Master Agreement; (2) to ensure that their employees work in accordance with the schedule of hours established in the Master Agreement; (3) to submit certified payroll records to Local 3 and to the Associations; and, (4) to submit any disputes regarding their compliance with these requirements to the grievance procedures set forth in the Master Agreement.

The plaintiffs in this case are independent nonunion truckers with an established history of off-site hauling. When they learned of the impending implementation of Section

24E, they became concerned it would effectively prevent the General Contractors from continuing to do business with them. Accordingly, they threatened Local No. 3 and the Associations with a lawsuit. This development caused the Associations to refuse to sign and implement Section 24E out of concern that it might not be lawful. This refusal prompted Local No. 3 to file an action for declaratory judgment against the Associations seeking a declaration that the subcontracting restrictions in Section 24E were lawful under federal labor and antitrust law.

In that action, to which the independent nonunion truckers were not parties, Judge David A. Ezra ruled that Section 24E was facially valid and did not violate section 8(e) of the National Labor Relations Act[1] because Section 24E constituted a valid "union standards clause." *See Associated Builders & Contractors v. N.L.R.B.*, 654 F.2d 1301, 1307 (9th Cir.1981), *aff'd in part, vacated in part*, 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982). Quoting and relying on *General Teamsters Local 386*, 198 N.L.R.B. 1038 (1972), Judge Ezra concluded that the disputed restrictions furthered the union's "legitimate interest in preventing the undermining of the work opportunities and standards of employees in a contractual bargaining unit by subcontractors who do not meet the prevailing wage scales and employee benefits covered by the contract." *Id.* In so holding, however, Judge Ezra noted that "where a union standards clause is intended not to protect or preserve the working standards of employees in the unit, but rather to control the employment practices of firms that seek to do business with the employer and to aid and assist union members generally, the object of that clause is secondary and unlawful." (citing *General Teamsters Local 386*, 198 N.L.R.B. at 1038). *See Sheet Metal Workers Local 91*, 294 N.L.R.B. 766, 770 (1989); *National Woodwork Mfrs. Ass'n v. N.L.R.B.*, 386 U.S. 612, 644–45, 87 S.Ct. 1250, 1268–69, 18 L.Ed.2d 357 (1967). Accordingly, Judge Ezra opined that although Section 24E was facially valid, "it may nonetheless be

unlawful as applied." (citing *Building Materials and Construction Local 216*, 198 N.L.R.B. 1046 (1972), *aff'd sub nom. Building Materials & Construction Local No. 216 v. N.L.R.B.*, 520 F.2d 172 (D.C.Cir.1975)).

In *Building Materials*, the union sought to apply similar restrictions to subcontractors hauling pre-stressed concrete girders. Because the general contractors had never hauled pre-stressed girders and had no plans to do so, the court upheld the NLRB's conclusions (1) that the object of the restrictions, as applied to the hauling of pre-stressed girders, was not the preservation or protection of unit work, and (2) that therefore their aim was "secondary" and thus a violation of section 8(e). *Building Materials*, 520 F.2d at 179. Noting that "the question of whether the restrictions are invalid, as applied, depends on specific factual situations that may in time unfold," Judge Ezra deferred resolution of this issue to a later date. *See In re Bituminous Coal Wage Agreements*, 756 F.2d 284, 290–91 (3d Cir.), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985).

Building on his holding that the disputed clause did not violate section 8(c) and was a legitimate subcontracting restriction, Judge Ezra also held that the clause did not violate federal antitrust law which excepts traditional union activity from antitrust review. *Continental Maritime v. Pacific Coast Metal Trades*, 817 F.2d 1391, 1393 (9th Cir.1987); *California Dump Truck Owners Ass'n v. Associated General Contractors*, 562 F.2d 607, 610 (9th Cir.1977).

Needless to say, both Local No. 3 and the Associations were generally pleased with the outcome, but the independent nonunion truckers were not. Thus, the independent truckers filed the present lawsuit challenging the validity of Section 24E as applied to them. Because they were not parties to the earlier lawsuit, the independent truckers were permitted again to litigate the issues decided by Judge Ezra, including the "as applied" issue he did not decide. The inde-

---

1. Section 8(e) makes it an unfair labor practice for any labor organization and any employer "to enter into any contract or agreement, express or implied, whereby such employer ... agrees to

... cease doing business with any other person." 29 U.S.C. § 158(e) (1988). Any such contract shall to that extent be unenforceable and void.

pendent truckers originally filed this lawsuit only against Local No. 3, but the district court permitted the Associations to intervene as plaintiffs seeking a declaration as to the legality and enforceability of Section 24E as applied to the facts of this case.

Eventually, motions and cross motions for summary judgment were joined, and Judge Samuel King ruled for the Associations and Local No. 3 and against the plaintiffs. On the central issue of whether Section 24E was valid as applied, Judge King held that it was because it served as a "union standards clause" designed appropriately (1) to preserve the work of the union, and (2) to preserve "union standards."

The independent truckers appeal this ruling. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings consistent with this opinion.

I

A.

■ The first issue we must decide is whether the appropriate universe for work preservation analysis is the entire State of Hawaii, as the Associations and Local No. 3 claim, or whether it can be limited to just the island of Maui, as the independent truckers argue. Judge King held that the relevant work universe was coextensive with the bargaining unit, and thus that the universe to which we look in testing Section 24E as applied is the entire State of Hawaii. We agree. The record demonstrates that many General Contractors, including all the largest in the state, do business on all of the Hawaiian islands. Contractors move equipment from island to island, and union members move as well to find work. It would be senseless to break the state into parts for this analysis, possibly creating different rules for each island.

B.

■ Next, we must decide from the record whether, as a matter of law, and looking at the State of Hawaii as a whole, Section 24E

is valid "as applied." To do this we must determine

whether the contract clause at issue has the "primary purpose of protecting unit work or unit standards" or, instead, the secondary purpose of promoting the broader goals of the union "by asserting control over the labor relations" of other employers. [*Associated Gen. Contractors*, 280 N.L.R.B. 698 (1986).] ... As the Supreme Court has stated, the touchstone of Section 8(e) is whether the agreement is addressed to "the labor relations of the contracting employer *vis-a-vis* his own employees" or whether it is "tactically calculated to satisfy union objectives elsewhere." *National Woodwork Mfrs. [v. NLRB]*, 386 U.S. 612, 644–45 [87 S.Ct. 1250, 1268–69, 18 L.Ed.2d 357] (1967).

*Sheet Metal Workers Local 91*, 294 N.L.R.B. at 770.

Judge King held, under this test, that if the appropriate universe for work preservation analysis was only the island of Maui, there would exist a genuine issue of material fact as to whether there was any relevant work to preserve. He added, however, that an examination of the state as a whole would reveal that Association members performed at least 2.5% to 7.5% of the total amount of off-site hauling work ordinarily performed by the plaintiffs. Judge King concluded that this amount of off-site hauling was sufficient as a matter of law to establish that Section 24E had a legitimate work preservation purpose.

■ Although this is a close call, we respectfully disagree with Judge King. Although Maui might not be the sole universe to which one must look to determine this issue, neither can what we learn from Maui be ignored when we examine the situation statewide. Looking at the *whole* factual picture in the light most favorable to the non-moving party, it appears that on Maui only three of sixty-seven General Contractors ever perform the work at issue, and then only occasionally. On Oahu, there may be only three Generals who do such work whereas the other sixty-four or sixty-five do not do such work *anywhere* in the State. This scenario does not demonstrate that the

disputed work has been "traditionally performed" by the General Contractors. In this respect, the present case is similar to *Sheet Metal Workers Union Local 162 (Associated Pipe and Fittings Manufacturer, et al)*, 207 N.L.R.B. 741 (1973), where the Board affirmed a holding by an ALJ that the clause under consideration was secondary and violated § 8(e) because it did not have the purpose of preserving work:

> [O]f some 35 contractors who appear to engage in any commercial work in excess of 3,200 square feet, the overwhelming majority purchase from 90 to 100 percent of the round pipe and fittings each uses on his construction jobs from mass production manufacturers, and ... this has been a continuous practice on the part of most of the contractors for periods ranging up to 20 years....
>
> ....
>
> ... [T]he conclusion is inescapable that the fabrication of these items by unit employees has not been customary or traditional at any time.... [W]hile it has been shown that contractors can, and in some instances do, fabricate round pipe and fittings, this comes about only in exceptional situations and to meet special needs.

*Id.*, at 748–49. Moreover, the Associations appear to concede that their involvement in this work "has been declining over time, yet some remains." Apparently, the General Contractors do not want to "tie their assets up into owning a whole lot of metal [and sometimes] letting it sit around idle."

■ In summary, we conclude that the record demonstrates a genuine issue of material fact as to whether Section 24E, as applied to these facts, had a legitimate primary object of preserving relevant work. The work the Associations claim to want to preserve gives every appearance of being so scanty that Section 24E cannot be viewed as a matter of law as a legitimate means to address "the labor relations of the contracting employer vis-a-vis his own employees." *National Woodwork Mfrs.*, 386 U.S. at 645, 87 S.Ct. at 1268. As Judge Ezra observed, an "as applied" analysis is heavily dependent on the facts, and the record in this regard is replete with conflicting affidavits. *Accord In*

*re Bituminous Coal*, 756 F.2d at 293 ("[W]hether the clause is valid ... must depend on individualized fact finding.").

■ Our holding as to Section 24E necessarily requires us to vacate the district court's grant of summary judgment in favor of the Associations and Local No. 3 on the issue of whether Section 24E violated Sections 1 and 2 of the Sherman Act and the Clayton Act. We do so based in part on *Richards v. Neilsen Freight Lines*, 810 F.2d 898 (9th Cir.1987).

In *Richards*, the plaintiff, a nonunion employer, alleged that the union pressured union employers to boycott the plaintiff because the union was attempting to organize the plaintiff's employees. The boycott was designed to force the plaintiff to change its substandard wages and working conditions. 810 F.2d at 906. The plaintiff argued that the union-led activity was not covered by the nonstatutory exemption from antitrust review because the activity constituted an unfair labor practice under section 8(e). We rejected that argument:

> The Supreme Court's consideration ... of the actual and potential anticompetitive effects of [such] agreement[s] independently of the violation of section 158(e) suggests that the presence of a section 158(e) violation may not itself decide the exemption issue.... *Connell [Constr. Co. v. Plumbers & Steamfitters Local Union·No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975),] does not suggest that every violation of section 158(e) gives rise to an antitrust suit. It is not paradoxical that a labor law violation may still be within the antitrust exemption, for the violation will carry its own remedies under the labor laws, although we recognize that in some cases a violation of the labor laws may involve conduct whose consequences are so far-reaching that it falls outside the exemption. Where, as here, there is no showing the alleged agreements pose actual or potential anticompetitive risks other than those related to a reduction in competitive advantages based on differential wage and working conditions, the nonstat-

utory labor exemption prevents antitrust scrutiny of the union activity.

*Id.* at 906 (citation omitted).

The independent truckers argue that *Richards* is distinguishable on its facts, pointing out that the offending union activity in that case was limited in scope and market impact as compared to the alleged marketwide impact in this case. Quoting the Sixth Circuit for the proposition that *"Richards* goes to the extreme in protecting union activity...," *In re Detroit Auto Dealers Assn, Inc.,* 955 F.2d 457, 466 (6th Cir.1992), the independent truckers ask us to draw a line between *Richards* and the instant case. Because a trial is in the offing, however, we decline the independent truckers' suggestion in favor of remanding this issue for resolution on a more complete record by the district court. *See also Sun–Land Nurseries v. Southern California District Council,* 793 F.2d 1110, 1117 (9th Cir.1986) ("a valid subcontracting clause contained in a collective bargaining agreement cannot serve as the basis of an antitrust claim," unless it is an instrument of an antitrust conspiracy.). Parenthetically, we do not believe that such an approach in this case places the jurisdictional cart before the horse, as now claimed at the eleventh hour by the Associations. *See Sun–Land Nurseries,* 793 F.2d at 1118, n. 1.

### C.

■ Judge King held, however, that "even in the absence of work to preserve," Section 24E would be valid "as applied" because it also preserves "union standards." Judge King said:

> [W]hile "work preservation" and "union standards" are often discussed together, they are two separate concepts and either or both may be legitimately sought by unions through subcontracting agreements. Protecting union wages and benefits for the unit employees serves the unit's interests, independent of preserving work. It prevents the erosion of union wage rates by non-union truckers, and is thus a valid, primary goal of the union.

We disagree with this analysis. As we read the cases and consider the reasons why primary purpose agreements are acceptable but secondary boycotts are not, it is clear to us that without work to perform, the preservation of union standards per se is tantamount to attempting "to satisfy union objectives elsewhere." *Sheet Metal Workers Local 91,* 294 N.L.R.B. at 770. If there is no substantial work to preserve, if there is no substantial competition for the work, it does not appear, as Judge King believed, that the agreed upon union wage or work opportunities could be eroded by others doing different work.

Indeed, the district court's reliance on *Sheet Metal Workers Local 91* for its conclusion appears misplaced given that the Board's justification for union standards clauses in that case was the protection of unit work:

> It is also open to argument—again one not advanced by Respondents—that the clause simply protects union standards, that is, if the related firms paid union wages it would not be necessary for them to also sign union agreements. *Similar clauses are found to be lawful in other contexts subcontracting, for example, because they conceivably protect unit work.*

294 N.L.R.B. at 771 (emphasis added). *See also Plumbers & Steamfitters Local 342 v. N.L.R.B.,* 598 F.2d 216, 219 (D.C.Cir.1979) ("The Supreme Court has made clear and the Board acknowledges, that not all so-called 'work preservation' agreements such as the union standards clause in the Agreement violate the National Labor Relations Act."); *Building Materials & Construction Teamsters Union Local No. 216, Etc. v. N.L.R.B.,* 520 F.2d 172, 179 n. 6 (D.C.Cir.1975) (court affirmed Board's holding that "[s]ince employers who [were] parties to the AGC contract were not engaged in [a particular] type of hauling, nor [were] shown even to have anticipated its performance, the object of [the union standards clause] was not the preservation or protection of unit work"); *Truck Drivers Union Local No. 413 v. N.L.R.B.,* 334 F.2d 539, 548 n. 13 (D.C.Cir.) ("Since this clause is entitled 'Subcontracting,' we assume—in the absence of any indication to the contrary—that its scope is limited to the contracting out of work which

otherwise would be performed by members of the bargaining unit."), *cert. denied,* 379 U.S. 916, 85 S.Ct. 264, 13 L.Ed.2d 186 (1964); *In re Bituminous Coal,* 756 F.2d at 289 ("A union standards clause is designed to inhibit subcontracting of work that would otherwise be performed by members of the bargaining unit."); *Associated General Contractors,* 280 N.L.R.B. 698, 701–02 ("[C]ontractual clauses with a primary purpose serving the general institutional interest of the union in organizing or regulating the labor policies of employers with whom the union does not have a collective bargaining relationship are unlawful under Section 8(e) because ... they are not aimed at preserving either the work *or* the employment standards of unit employees.") (emphasis added).

### D.

Local No. 3 argues that even if off-site hauling is not found to be work "traditionally or customarily" performed by the members of the bargaining units, the work in question is still "fairly claimable," i.e., work that requires the same skills and abilities as the traditional work of the unit employees. Under this doctrine, which has not yet been adopted in this circuit, where the employees have not actually done the work in dispute but where it is of the same type as their traditional work, a clause that would cover it may be upheld as a valid work preservation agreement. *See Frito–Lay, Inc. v. Retail Clerks Local 7,* 629 F.2d 653, 660 (10th Cir. 1980). The National Labor Relations Board has recognized the validity of this doctrine as a means of validating clauses that seek to recognize work regarded as fairly claimable. *Teamsters Local Union No. 89,* 254 N.L.R.B. 783, 786 (1981), *aff'd sub nom. N.L.R.B. v. General Drivers,* 684 F.2d 359 (6th Cir.1982).

We are unable to address this argument. The district court did not consider it, and the record is insufficient for us to tell whether it applies to this case. On remand, the parties shall have another opportunity to address this issue, assuming they wish to do so.

---

\* Henry G. Cisneros has been substituted for original defendant Jack Kemp, pursuant to Fed.

REVERSED and REMANDED for further proceedings consistent with this opinion.